IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

ROCK HILL DIVISION

| | | |
|---|---|---|
| Patrice L. Tavernier, | ) | |
| | ) | Civil Action No. 0:10-01753-MBS |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **OPINION AND ORDER** |
| Healthcare Management Associates, | ) | |
| Inc. and Chester HMA, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Patrice L. Tavernier ("Plaintiff") filed this action against her former employers, Defendants Healthcare Management Associates, Inc. and Chester HMA, LLC (hereinafter collectively referred to as "HMA"), on July 6, 2010, alleging violations of the Age Discrimination in Employment Act of 1967 ("ADEA") , 29 U.S.C. §§ 621 et seq.; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"); and the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d)(1). (ECF No. 1.) HMA denies Plaintiff's allegations and filed counterclaims for breach of contract and unjust enrichment on September 3, 2010. (ECF No. 7.)

This matter is before the court on motion for summary judgment filed by Plaintiff as to HMA's counterclaims on May 25, 2011. (ECF No. 27.) HMA filed a response on June 13, 2011 (ECF No. 30), to which Plaintiff filed a reply on June 20, 2011. (ECF No. 32.) Also before the court is motion for summary judgment as to Plaintiff's claims filed by HMA on May 31, 2011. (ECF No. 28.) Plaintiff filed a response on June 17, 2011 (ECF No. 31), to which HMA filed a reply on June 27, 2011. (ECF No. 33.)

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., the matter was referred

to United States Magistrate Judge Joseph R. McCrorey for pretrial handling. On March 1, 2012, the Magistrate Judge issued a Report and Recommendation in which he recommended granting summary judgment to HMA on all Plaintiff's claims. He further recommended granting Plaintiff's motion for summary judgment on HMA's counterclaims. (ECF No. 35.) Plaintiff filed objections to the Report and Recommendation on March 15, 2012 (ECF No. 36), to which HMA filed a reply on March 23, 2012. (ECF No. 23.) Neither party objected to the Magistrate Judge's recommendation that the court grant Plaintiff's motion for summary judgment.[1]

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court reviews *de novo* only those portions of a Magistrate Judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to—including those portions to which only "general and conclusory" objections have been made—for clear error. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir 1982). The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

---

[1] HMA, in its Response to Plaintiff's objections to the Magistrate Judge's Report and Recommendation, stated that it did not object to the Report based on the fact that the Report recommended summary judgment as to all of Plaintiff's claims, thereby rendering moot HMA's counterclaims. HMA requested that, in the event the court does not adopt the Report, the court analyze and reinstitute HMA's counterclaims. For the reasons set forth hereinbelow, the court has adopted the Report and Recommendation in full and finds to error in the Magistrate Judge's analysis of Plaintiff's motion for summary judgment.

# FACTS

The following facts are either undisputed or taken in the light most favorable to the non-moving party, to the extent they are supported by evidence in the record.[2]  Plaintiff is a 67 year old female.  (ECF No.31-3, 3 & 36-1, 1.)  HMA is a for-profit corporation that  owns and operates general acute care, non-urban hospitals, located throughout the United States.  (ECF No 28-3, 2.)  HMA hired Plaintiff in 1992 as the Director of Nursing, to work at its  Marathon, Florida hospital at a salary of $49,000 per year.  (ECF No. 38-6, 2.)  Throughout her tenure working for HMA, Plaintiff obtained multiple promotions.  (ECF No. 28-6, 4.)

In September 2004 Plaintiff was promoted to Chief Executive Officer ("CEO") of Chester Regional Hospital in Chester, South Carolina, at a salary of $130,000.  (Id., 7.)  Plaintiff was satisfied with the terms of this compensation and considered it fair given her experience.  (ECF No. 28-4, 10.)  She subsequently received increases in salary to $137,000 in 2005, $150,000 in 2006, and $157,000 in 2007.  (ECF No. 28-6, 4.)

When Plaintiff began working as CEO at Chester Regional Hospital, Page Vaughan ("Vaughan") was HMA's Regional Vice President and Plaintiff's supervisor.  (ECF No.  28-7, 2.)  Vaughan directly supervised Plaintiff from 2004 through August of 2008.  (Id.)  Vaughan was generally satisfied with Plaintiff's performance in 2005 and 2006, but in 2007 Vaughan determined that Plaintiff's level of engagement, drive, and dedication had deteriorated.  (Id., 2-3.)  Further, at the end of 2007, Chester Regional Hospital's financial performance ranked twenty-ninth out of fifty-eight HMA hospitals.  (ECF No. 31-5, 2.) Thus, in December 2007, Vaughan advised HMA's Chief

---

[2] Although the court must construe any dispositive issues of fact in favor of HMA when ruling on Plaintiff's motion for summary judgment, Plaintiff's motion for a summary judgment does not turn on the resolution of disputed issues of fact.

Operating Officer ("COO") about Plaintiff's performance deficiencies and recommended that Plaintiff be moved out of the CEO position. (Id.) HMA's COO decided to issue Plaintiff a performance improvement plan instead. (Id.)

Vaughan conducted Plaintiff's 2007 performance evaluation in January 2008. Plaintiff received the lowest possible score for the financial performance of the hospital. (Id.) Plaintiff was placed on a ninety-day probation period and received a performance action plan. (ECF No. 28-4, 19 & 28-6, 8-12.) Plaintiff admitted that Chester Regional Hospital was not meeting HMA's performance expectations. (Id., 11.) Plaintiff further admitted the hospital's financial performance was "bad" and the hospital staff was not working as a team. (ECF No. 28-4, 16.) Plaintiff agreed that much improvement was needed. (Id., 16.) While Plaintiff was not satisfied with the financial performance of the hospital, Plaintiff did not think that she could have done more to affect the financial status of the hospital. (Id., 14,15.) However, Plaintiff admits that as the CEO she was ultimately responsible for the hospital's performance and for correcting its performance. (Id., 13-16.)

Pursuant to Vaughan's request, Plaintiff developed an action plan in response to her evaluation. (Id., 23.) Plaintiff testified in her deposition that she did not believe all of the items listed in the action plan were necessary, and she claims that she inserted some items in the plan to satisfy Vaughan. (Id., 24.) Plaintiff also contacted the President of HMA and complained about Vaughan's supervision and her evaluation. (ECF 28-4, 20-21.) Plaintiff received another raise after her probationary period was completed.[3] (Id.)

Vaughan was reassigned by HMA to a hospital in Oklahoma in July 2008. HMA hired Vicki

---

[3] Vaughan never finalized the results of Plaintiff's performance improvement plan. (ECF 28-7, 3.) Vaughan stated that while he noticed some improvement initially, he did not believe Plaintiff was meeting HMA's expectations. (Id.)

Briggs ("Briggs") in August 2008 to replace Vaughan. (ECF No. 38-4, 30.) On August 28 and 29, 2008, Briggs conducted her first site visit to Chester Regional Hospital. (Id., 31.) During a meeting with Plaintiff to discuss the status of and future plans for the hospital, Plaintiff allegedly told Briggs about her plan to retire in one or two years. (ECF No. 28-8, 6.) Plaintiff denies discussing plans to retire with Briggs. (ECF No. 28, 32.)

In July 2008, Craig Walker ("Walker") applied for the position of COO at Chester Regional Hospital. (ECF No. 28-10, 2.) Walker has a Master's Degree in Health Administration as well as substantial hospital administration experience. (Id.) Walker asserts that in his initial telephone conversation with Plaintiff, she told Walker that she believed he was overqualified for the COO position and that she was considering hiring someone else. (Id.) Walker further asserts that Plaintiff "sold" the COO position during an in-person interview with him by stating that she planned to retire and was looking to hire a successor. (Id.) Plaintiff recalls telling Walker that he had the potential to become CEO when she retired. (ECF No 28-4, 36.) Plaintiff admits that Walker was overqualified for the COO position and qualified for the CEO position. (Id., 37.) Plaintiff contends she recommended another candidate for the position since she had no plans to retire. (Id., 34.) Nevertheless, in October 2008, HMA hired Walker as its COO for Chester Regional Hospital over Plaintiff's objections. (Id., 34-35 & ECF No. 28-10, 3.) Plaintiff was aware that Walker accepted the COO position with the expectation of becoming a CEO. (Id., 37.)

In 2008, Briggs determined that Chester Regional Hospital still was operating below expectations. (ECF No. 28- 9.) Because of Chester Regional Hospital's financial issue and with the understanding that Plaintiff had indicated some interest in retirement, Briggs determined that offering Plaintiff a retirement package could be beneficial for both Plaintiff and HMA. (Id.) Briggs

received approval to offer Plaintiff a retirement package that included paying her six months of salary, a total of $78,500, spread over a twelve-month period; health insurance for twelve months; and other continued vesting benefits. (<u>Id.</u>, 11 & ECF No. 28-6, 16.) Briggs met with Plaintiff on December 4, 2008 and offered Plaintiff the retirement package. (ECF No. 28-8, 20.)

Plaintiff asserts she was shocked, speechless, and was not prepared for the offer. (ECF No. 28-4, 41.) Plaintiff asked Briggs if she had any options other than retirement. According to Plaintiff, Briggs responded that "there were no options." (<u>Id.</u>) During the meeting, Plaintiff proposed that the offer could be increased to nine months of pay spread over a fifteen-month period, with paid benefits for fifteen months. (ECF No. 28-5, 2.) This extension would provide Plaintiff insurance until she was eligible for social security and medicare benefits. Plaintiff states that because she had no options other than to retire, she negotiated the best retirement package she could under the circumstances. (<u>Id.</u>, 2, 3.)

Briggs received approval to accept Plaintiff's counterproposal. (<u>Id.</u>, 4.) When notified of the approval, Plaintiff responded to Briggs in an email: "Sounds better now but I need to see **everything** in writing from Fred [Drow, HMA's Senior Vice President of Human Resources] so Dave [Plaintiff's husband] and [I] can this weekend calculate accordingly how this covers us - I will tell you on Monday but feel this will be fine - like I said, I need to see the whole package in writing." (ECF No. 28-6, 18.) The terms of the retirement package were confirmed in an e-mail on December 8, 2008. (<u>Id.</u>, 19.) Plaintiff thereafter accepted the offer with an effective retirement date of January 1, 2009. (ECF 28-5, 9.) She was 64 at the time she left HMA's employ. (ECF No. 1, ¶ 16.)

Plaintiff did not seek an explanation from HMA about the reason for the retirement offer. (ECF No. 28-4, 42). She did not complain to any of Briggs' supervisors about the offer or tell them

that she felt she was being forced to retire. (Id., 16.) Plaintiff did not ask Briggs or anyone else within HMA whether it was possible to move to another position within the company. (Id., 44)

HMA did not require Plaintiff to sign any type of agreement or release as a condition of receiving the retirement package because HMA viewed the retirement package as a "positive situation." (ECF No. 28-3,6.) Drow indicated that "[i]f it would have been an involuntary situation, I'm sure I would have handled it quite differently. We have a policy where we would never give that much severance to a person without them signing a general release in anything that's at all contentious." (Id., 2 & 6.).

HMA paid Plaintiff in accordance with the terms of the negotiated retirement package. (ECF 28-2, 2.) HMA also paid Plaintiff a car allowance and her country club dues for fifteen months. (Id.). The amount paid to Plaintiff totaled $133,563.78. (Id.) Walker, who was 41 years old, replaced Plaintiff as the CEO at Chester Regional Hospital. (ECF No. 31-2, 3.) Walker's compensation was set at $150,000, which was $7,000 lower than Plaintiff's salary at the time she left her employment with HMA. (ECF No. 28-10, 3.)

Plaintiff filed a charge of discrimination with the South Carolina Human Affairs Commission and with the United States Equal Opportunity Commission, alleging violations of Title VII and the ADEA. (ECF No. 1.) Plaintiff received her right to sue letter on June 16, 2010. (Id.)

**STANDARD OF REVIEW**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the

absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir.1987) (emphasis in original) (internal quotation marks and citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

## DISCUSSION

### I.     ADEA

Plaintiff claims HMA subjected her to disparate treatment in violation of the ADEA by

involuntarily terminating her and classifying her as a retired employee effective January 1, 2009. (ECF No. 1, ¶ 17.) Plaintiff contends she was meeting HMA's performance expectations at the time she was terminated. (Id. ¶ 24.) Plaintiff also claims her involuntary termination and forced retirement constitute an adverse employment action within the meaning of the ADEA. (Id. ¶ 26.)

The ADEA addresses age related employment issues by making it "unlawful for an employer to: (1) to fail or refuse to hire . . . any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a)(1). To establish a disparate-treatment claim under the ADEA, a plaintiff may avert summary judgment and establish his or her claim using one of two avenues of proof. Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 284 (4th Cir. 2004). First, a plaintiff may "prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer's decision." Gross v. FBL Fin. Servs., 129 S. Ct. 2343, 2351 (2009). In using this method, it is important to note that "[t]he burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." Id. at 2352.

Alternatively, a plaintiff may proceed using the burden-shifting, or "pretext" framework. Hill, 354 F.3d at 285. To prevail under the burden-shifting framework, a plaintiff must first show: (1) she is a member of a protected class, that is, 40 years or older; (2) she suffered an adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or she was replaced by a substantially younger person. Id. If the plaintiff can establish a *prima facie* case,

the burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for its actions against Plaintiff. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-54 (1981). If the defendant meets this burden of production, the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination. Hill, 354 F.3d at 285. The burden to demonstrate pretext "merges with the ultimate burden of persuading the court that the plaintiff has been the victim of intentional discrimination." Id.

## A. The Magistrate Judge's Report and Recommendation

1. The Magistrate Judge determined that Plaintiff had not produced direct evidence of age discrimination. (ECF No. 35, 12.) Plaintiff cited as direct evidence Briggs' alleged statement on December 4, 2008 that Plaintiff was required to retire and there were no other options. (ECF No. 28-41.) The Magistrate Judge concluded that this was not direct evidence of discrimination because in the employment context, direct evidence of discrimination is "evidence of conduct or statements that both reflect directly on the alleged discriminatory attitude and that bear directly on the contested employment decision." Taylor v. Va. Union Univ., 193 F.3d 219, 232 (4th Cir. 1999), abrogated on other grounds, Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003.)

With respect to indirect or circumstantial evidence of discrimination, the Magistrate Judge assumed that, for purposes of summary judgment, Plaintiff's separation from HMA was an adverse employment action. (Id., 13.) However, the Magistrate Judge found that Plaintiff had not established a *prima facie* case of age discrimination because she was not performing her job duties at a level that met HMA's legitimate expectations at the time of her forced retirement. (ECF No. 35, 13.) In determining that Plaintiff was not meeting HMA's legitimate expectations, the Magistrate

-10-

Judge identified specific evidence, including Plaintiff's placement on an improvement plan in early 2008[4] and the decreasing financial performance of Chester Regional Hospital. (ECF No. 35, 13.)

The Magistrate Judge found that even if Plaintiff could establish her *prima facie* case of age discrimination, HMA had articulated a legitimate nondiscriminatory reason for Plaintiff's separation. The Magistrate Judge noted that Briggs decided to offer Plaintiff a retirement package because, in her view, the performance of Chester Regional Hospital was not meeting expectations; Plaintiff had expressed a desire to retire; and Briggs believed that the retirement offer could achieve both objectives. (ECF No. 35, 14.) Finally, the Magistrate Judge also found that Plaintiff had not shown that the reasons HMA gave for its decision were false or pretextual. (Id.)

The Magistrate Judge found that Plaintiff failed to satisfy the last element of a *prima facie* case of discrimination because she did not establish that "but for" her age, HMA would not have taken the alleged adverse action. Plaintiff contends she has "but for" evidence of discrimination in that Briggs, who is 57 years old, replaced Plaintiff with Walker, who is 41 years old. (Id.) In addition, Briggs replaced the CEO of HMA's Lake Norman Hospital, who was in his 50's, with someone in his 40's. (Id., 13-15.) Briggs also filled a vacancy at HMA's Carolina Pines Hospital with someone in his 40's. (Id., 20.) Conversely, Briggs did not replace the CEO's at HMA's Davis Hospital, Hamlet Hospital, and Gaffney Hospital, all of whom were in their 40's. (Id., 15.) After considering Plaintiff's "but for" evidence, the Magistrate Judge concluded that the evidence failed to reach the level of showing Plaintiff was involuntarily retired or terminated because of her age.

---

[4] The Magistrate Judge noted that there was some evidence that Plaintiff had met the goals on the improvement plan that she had drafted.

**B.	Plaintiff's Objections**

1.	Plaintiff first objects to the Magistrate Judge's finding that Plaintiff failed to present direct evidence of age discrimination.  Plaintiff contends that the Magistrate Judge failed to address Plaintiff's position under the provisions of the ADEA that provide that a forced retirement is by definition an unlawful act.  Plaintiff again alleges she has produced direct evidence of age discrimination because Briggs stated at their December 4, 2008 meeting that Plaintiff had  no option but to retire.  The court concurs with the Magistrate Judge  that Briggs' statement is not a statement that reasonably can be said to both reflect directly on the alleged discriminatory attitude and bear directly on the decision to offer Plaintiff a retirement package.  Plaintiff's objection is without merit.

2.	Plaintiff next objects to the Magistrate Judge's finding that Plaintiff failed to establish a *prima facie* case of age discrimination by circumstantial evidence.  First, Plaintiff disputes the Magistrate Judge's finding that she failed to meet HMA's performance expectations.  Plaintiff asserts that during her employment with HMA, she had only one poor evaluation and she satisfied the performance goals that were developed after the evaluation.  Plaintiff further asserts that Briggs never expressed any concerns with Plaintiff concerning her performance.  Plaintiff also argues that Chester Regional Hospital's financial performance at the end of 2007, was not as poor as made out by HMA.  She reiterates that twenty-nine hospitals in the HMA group ranked below Chester Regional Hospital, including four of the seven in the same region.  Plaintiff contends once again that Chester Regional Hospital's financial performance would have been better but for matters outside of her control.   As the Magistrate Judge properly noted, Plaintiff's self-assessment of her performance is not relevant; rather it is the perception of the decision maker that is relevant.  See Cartee v. Wilbur Smith Assocs., 2010 U.S. Dist.  LEXIS 128745, at * 12-13 (D.S.C. Oct.  6, 2010).

Moreover, Plaintiff admits that Chester Regional Hospital was not meeting HMA's expectations and that as the CEO she was ultimately responsible for the financial success of the Hospital. (ECF No. 28-4, 13-16.)

Plaintiff cites to Clark v. Coats & Clark, Inc., 990 F.2d 1217 (11th Cir. 1993), asserting that the within action presents facts that are identical in all material respects to Plaintiff's case and contending that Clark may be instructive. In Clark, the Eleventh Circuit Court of Appeals ruled that to prove a prima facie case of age discrimination, a plaintiff must show that she: (1) was a member of a protected group of persons between the ages of forty and seventy; (2) was subject to adverse employment action; (3) was replaced with a person outside the protected group and; (4) was qualified to do the job. Id. at 1227. However, in the Fourth Circuit, a plaintiff must not only prove that she is qualified, she must also prove that she is meeting the employer's legitimate performance expectations. See Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 514 (4th Cir. 2006) (noting the plaintiff's argument that he need only show he is qualified for the job, rather than also meeting his employer's legitimate job expectations, is foreclosed by circuit precedent). The court is not persuaded to disregard Fourth Circuit precedent in favor of the Eleventh Circuit's reasoning in Clark.

Finally, Plaintiff cites to Inman v. Klockner Pentaplast of Am., Inc., 347 F. App'x 955, 957 (4th Cir. 2009), asserting that a performance issue should be decided by the jury. In Inman, the Fourth Circuit ruled that the plaintiff submitted evidence to prove he was meeting the employer's performance expectations, including the fact that he received bonuses every year and that he was singled out for praise a couple of weeks before he was fired. Id. at 960. The Fourth Circuit further ruled that the plaintiff presented evidence that the performance deficiencies cited by the employer were a mere pretext. Id. The Fourth Circuit reversed the district court order granting summary

judgment.

The facts set forth in <u>Inman</u> differ from the facts in Plaintiff's case. Here, the Magistrate Judge relied on evidence of Plaintiff's having to satisfy a performance improvement plan as well as the financial performance of Chester Regional Hospital in determining that Plaintiff failed to satisfy the third element of the *prima facie* case. The court concludes that the Magistrate Judge correctly determined that Plaintiff was not meeting HMA's legitimate expectations at the time of her separation from HMA. Plaintiff's objection is without merit.

3.      Plaintiff next objects to the Magistrate Judge's determination that Plaintiff failed to offer evidence of pretext in response to HMA's articulated reason for Plaintiff's termination. (ECF No. 36-1, 11.) Plaintiff does not dispute that HMA has articulated a legitimate, non-discriminatory reason for Plaintiff's separation. Instead, Plaintiff argues that she presented evidence of pretext by refuting statements made by Briggs and others concerning her retirement plans and her performance deficiencies. However, even if HMA misunderstood Plaintiff's intentions regarding retirement, the record reflects that Briggs had a good faith belief that Plaintiff was interested in retirement when she offered Plaintiff the early retirement package. There also is no dispute that HMA was dissatisfied with Plaintiff's performance, regardless of how Plaintiff viewed her performance. Additionally, Plaintiff admitted in her deposition that she did not believe there was a specific HMA individual who had a discriminatory animus toward Plaintiff. (ECF No. 28-5, 25.) The court concurs with the Magistrate Judge that Plaintiff failed to come forth with evidence of pretext.

After careful review of Plaintiff's arguments, the court concurs with the Magistrate Judge that Plaintiff has failed to present evidence of pretext. Accordingly, the court finds that Plaintiff's evidence is insufficient to maintain a claim of age discrimination. Plaintiff's objection is without

merit.

## II.    Title VII

Plaintiff alleges "[u]pon information and belief, based on Plaintiff's knowledge as a CEO of [HMA's] pay practices for subordinate level employees, [HMA] paid similarly situated male employees more than similarly situated female employees."  (ECF No. 1 ¶ 33.)

Title VII makes it unlawful for an employer "to fail or refuse to hire . . . or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e–2(a)(1).  A plaintiff may proceed under ordinary principles of proof using direct or indirect evidence, or, in the absence of direct proof of a defendant's intent to discriminate, a plaintiff can employ the scheme outlined in McDonnell Douglas v. Green, 411 U.S. 792  (1973), to establish a *prima facie* case of discrimination. To establish a *prima facie* case of wage discrimination under Title VII a plaintiff must show that: (1) she is a member of a protected class; (2) she was paid less than an employee outside the class; and (3) the higher paid employee was performing a substantially similar job. Brinkley–Obu v. Hughes Training, Inc., 36 F.3d 336, 343 (4th Cir.1994).  McDonnell Douglas provides that, once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory basis for the challenged employment action.  McDonnell Douglas, 411 U.S. at 802.  If the employer provides the required evidence of a nondiscriminatory reason for the action, the plaintiff must then show that the proffered reasons were not the true reasons for the employment action, but were a pretext for discrimination.  Id. at 804; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147, (2000).

## A. The Magistrate Judge's Report and Recommendation

The Magistrate Judge found Plaintiff failed to establish a *prima facie* case of gender discrimination under Title VII. Specifically, the Magistrate Judge found that Plaintiff's evidence of a disparity between HMA's pay of male CEO's and female CEO's fails to establish a *prima facie* case because some males made less than Plaintiff and other females. Finally, the Magistrate Judge found that even if Plaintiff can establish her *prima facie* case of discrimination under Title VII as to her comparator, Gary Lang ("Lang"),[5] HMA had articulated a legitimate, nondiscriminatory reason for paying Lang more than Plaintiff. Specifically, the Magistrate Judge observed that Plaintiff has a Bachelor's Degree in Nursing and did not gain experience as a hospital administrator until 1996. (ECF No. 28-6, 2.) Lang has a Master's Degree in Hospital and Health Administration and has worked in the capacity of administrator or CEO since 1981. (ECF No. 28-2, 3.) HMA contends Lang was hired for the Monroe hospital at a salary of $200,000 because this salary was necessary to attract him to the position. (Id.) HMA further represents that at the time the offer was made, Lang's base salary with his previous employer was $185,000. (Id.)

## B. Plaintiff's Objections

1. Plaintiff objects to the Magistrate Judge's finding that Plaintiff has not set forth a *prima facie* case of sex discrimination under Title VII. First, Plaintiff argues the Magistrate Judge erred in failing to find that Plaintiff's reliance on a median calculation between male and female CEO's does not establish evidence of disparate treatment. To the contrary, the Magistrate Judge correctly determined Plaintiff failed to show that she was paid less than similarly situated hospital CEOs. Plaintiff's compensation was higher than six other CEOs in thirteen HMA hospitals with a

---

[5] Lang was the CEO of HMA's Monroe, Georgia hospital.

bed size of under 100. (ECF No. 28-6, 21.) The highest paid individual in this category was a female. Id. Of the seven employees who were paid at a higher level than Plaintiff, four were females. Id.

Next, Plaintiff disputes the Magistrate Judge's determination that Plaintiff failed to set forth a *prima facie* case due to insufficient evidence showing that her comparator, Lang, held a position and had job responsibilities sufficiently similar to Plaintiff's position. Plaintiff argues that there is nothing in the record to suggest that the CEO positions at HMA are not similar. Plaintiff has the burden of bringing forth evidence that the position she occupied at Chester Regional Hospital was similar to the positions of other HMA CEO's. See Brinkley–Obu v. Hughes Training, Inc., 36 F.3d 336, 343 (4th Cir. 1994). Plaintiff's objection is without merit.

2. Plaintiff objects to the Magistrate Judge's finding that Plaintiff failed to offer evidence of pretext in response to HMA's articulated legitimate, nondiscriminatory reasons for paying Lang more than Plaintiff. The court concludes that Plaintiff has failed to come forth with evidence to show that HMA's proffered reasons are false or are a pretext for discrimination. Instead, Plaintiff sets forth a general objection to the Magistrate Judge's determination. See Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982.) The arguments presented in support of this objection are essentially the same arguments Plaintiff presented to the Magistrate Judge in opposing summary judgment and have been thoroughly addressed by the Magistrate Judge. Plaintiff's objection is without merit.

**III.    Equal Pay Act**

The Equal Pay Act provides that:

> (1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex . . . .

29 U.S.C. § 206(d)(1).

In order to establish a *prima facie* case under the Equal Pay Act, Plaintiff must show that she received less pay than a male co-employee performing work substantially equal in skill, effort, and responsibility under similar working conditions. See Wheatley v. Wicomico County, 390 F.3d 328, 331 (4th Cir. 2004). "This comparison must be made factor by factor with the male comparator. The plaintiff may not compare herself to a hypothetical male with a composite average of a group's skill, effort, and responsibility, but must identify a particular male for the inquiry." Houck v. Virginia Polytechnic Institute & State Univ., 10 F.3d 204, 206 (4th Cir.1993). If Plaintiff establishes a *prima facie* case, the burden shifts to HMA to prove that the difference in salary is justified by one or more of the four statutory exceptions. See 29 U.S.C. § 206(d)(1)(2002); Equal Employment Opportunity Comm'n v. Aetna Co., 616 F.2d 719, 724 (4th Cir.1980) (quoting § 206(d)(1)). The four statutory exceptions are: (1) a seniority system; (2) a merit system; (3) a system that measures earnings by quantity or quality of production, or (4) a differential based on any factor other than sex. If HMA successfully meet this burden, then Plaintiff's claim fails "unless [she] can satisfactorily rebut [HMA's] evidence." See Strag v. Board of Trustees, 55 F.3d 943, 948 (4th Cir.1995).

Unlike a Title VII claim, Plaintiff cannot establish an Equal Pay Act *prima facie* case by

simply producing evidence creating an inference that she was discriminated against in terms of her salary because of her gender. Rather, to establish a *prima facie* case under the Equal Pay Act, Plaintiff must affirmatively show that she received less pay than a male co-employee performing the substantially same work as she was performing.  Houck, 10 F.3d at 206.

**A.      The Magistrate Judge's Report and Recommendation**

The Magistrate Judge found that Plaintiff  failed to establish her *prima facie* case under the EPA because she had not shown that her alleged comparator, Lang, held a job that required equal skill, effort, and responsibility to hers, and that his job was performed under similar working conditions.  (ECF No. 35, 18-19.)  The Magistrate Judge also found that even if Plaintiff could establish a *prima facie* case under the EPA, HMA would prevail because HMA has articulated reasons for paying Lang more than Plaintiff that are based on factors other than gender.  As noted hereinabove, HMA contends that Lang was paid more because he holds a Master's Degree in Hospital and Health Administration; he worked in the capacity of Administrator/CEO or higher since 1981; and a higher salary offer was necessary to attract Lang to the position because Lang's base salary with his employer was $185,000 at the time  that HMA offered him the Monroe, Georgia job at $200,000.

The Magistrate Judge observed that courts have, in certain circumstances, found that market forces constitute "factors other than sex."  See, e.g., Cullen v. Indiana Univ. Bd. of Trs., 338 F.3d 693, 703 (7th Cir. 2003) (market forces, educational credentials and other factors may  be legitimate reasons to justify pay disparity).  The Magistrate Judge concluded Plaintiff had failed to rebut HMA's articulated reasons for paying Lang a higher salary.  Therefore, the Magistrate Judge recommended granting summary judgment on Plaintiff's EPA claim.

Plaintiff objects to the Magistrate Judge's determination that Plaintiff failed to establish a *prima facie* case. Plaintiff refers the court to her prior objection concerning her Title VII claim. For the reasons previously stated, the court finds Plaintiff's objection to be without merit.

Next, Plaintiff objects to the Magistrate Judge's finding that Plaintiff failed to offer evidence of pretext in response to HMA's articulated reasons for pay disparities. Plaintiff argues that the Magistrate Judge's analysis on this issue was in error because the Magistrate Judge used the Title VII standard rather than the EPA standard. Plaintiff argues that HMA has the burden of production and persuasion under the EPA to show pay disparities were based on reasons other than sex, and that HMA failed to meet its burden. See King v. Acosta Sales and Marketing, Inc., 2012 WL 80719 (7th Cir. 2012).

At the outset, Plaintiff misreads the Magistrate Judge's discussion on the EPA. The Magistrate Judge did not provide the incorrect analysis as suggested by Plaintiff. The Magistrate Judge utilized the standard set forth by the Fourth Circuit in Strag and determined that HMA had articulated reasons for paying Lang his salary based on factors other than his gender. Plaintiff directs the court to the King case. However, King simply restates the standard already utilized by the Magistrate Judge. In addition, the court notes the evidence presented by HMA is different from the evidence set forth by the defendants in King. In King, the defendants did not present evidence of the reasons they articulated for disparities in pay between male and female workers. Here, HMA has presented sworn affidavits and documentary evidence establishing numerous reasons for Lang's compensation. HMA has met its burden of production and persuasion. Plaintiff has failed to satisfactory rebut HMA's evidence. Plaintiff's objection is without merit.

**IV.    Plaintiff's Motion for Summary Judgment**

Plaintiff argues that HMA's counterclaims for breach of contract and unjust enrichment are barred by the Older Workers Benefit Protection Act (OWBPA) amendment to the ADEA.  Plaintiff also argues HMA's counterclaims should be dismissed because counterclaim cases arise in the context where there is a release, waiver, or covenant not to sue that fails to comply with the OWBPA.  In this case, there is no controversy that Plaintiff agreed to any release, waiver, or covenant not to sue as a part of the retirement offer.

The OWBPA amendment to the ADEA provides specific requirements for waiving an age discrimination claim. "An individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary."  29 U.S.C. § 626(f)(1).  Specifically,

[A] waiver may not be considered knowing and voluntary unless at a minimum-

(A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;

(B) the waiver specifically refers to rights or claims arising under this chapter;

(C) the individual does not waive rights or claims that may arise after the date the waiver is executed;

(D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;

(E) the individual is advised in writing to consult with an attorney prior to executing the agreement;

(F) (i) the individual is given a period of at least 21 days within which to consider the agreement; (ii) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of at least 45 days within which to consider the agreement;

(G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired.

§ 626(f)(1)(A)-(G).

An agreement purporting to waive an individual's rights arising under the ADEA that fails to conform to the statutory requirements does not waive an employee's right to seek relief under the ADEA. Oubre v. Entergy Operations, Inc., 522 U.S. 422, 426-28(1998). In Oubre, the United States Supreme Court explained, "[t]he statutory command is clear: An employee 'may not waive' an ADEA claim unless the waiver or release satisfies the OWBPA's requirements." 522 U.S. at 426-27.

The court concurs in the Magistrate Judge's recommendation that Plaintiff's motion for summary judgment be granted as to HMA's counterclaims.

## CONCLUSION

Upon consideration of the entire record, the court hereby **GRANTS** HMA's motion for summary judgment. (ECF. No. 28.) Further, the court **GRANTS** Plaintiff's motion for summary judgment as to HMA's counterclaims. (ECF No. 27.) The court accepts the Report and Recommendation of the Magistrate Judge and incorporates it herein by reference.

Finally, HMA, in its response to Plaintiff's objections to the Report and Recommendation, seek its costs and attorneys' fees. The court declines to address this issue. HMA may file an appropriate motion should its choose to do so.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Chief United States District Judge

March 30, 2012
Columbia, South Carolina